# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CAROL PRESLEY,**

**Plaintiff,**

**-vs-**                                              **Case No.  6:10-cv-351-Orl-18GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Carol Presley (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. *See* Doc. No. 1.  The Claimant maintains she became disabled on December 25, 2004, due to hypertension, degenerative disc disease, gastroesophageal reflux disease ("GERD") and multiple sclerosis ("MS"). R. 15, 99, 136, 712.[1]  At the administrative level, the Commissioner denied the Claimant's applications, finding that she is not disabled. R. 4-7.  For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[1] At the November 7, 2007 hearing, the Claimant amended her onset date from May 20, 2002 to December 25, 2004. R. 712.

## I.   <u>MEDICAL HISTORY</u>

The Claimant has an extensive medical history and has been treated for hypertension, degenerative disc disease, GERD, and most recently diagnosed with MS.  However, the issues raised on appeal are limited to the physicians' opinions and treatment records discussed below.

### A.   DR. BRUCE R. HOFFEN, M.D.

On December 6, 2005, Dr. Bruce R. Hoffen performed a consultative examination of the Claimant at the request of the Office of Disability Determination. R. 382-84.  The Claimant complained of headaches, neck and lumbar pain and hand numbness.  *Id.*  The Claimant stated that she underwent lumbar spine surgery in 1990 and continued to have lumbar pain which radiated down her left leg.  *Id.*  Dr. Hoffen noted that a magnetic resonance imaging ("MRI") of the Claimant's brain revealed no significant abnormalities.  *Id.*  Upon physical examination, Dr. Hoffen noted trigger point areas over the trapezius, supraspinatus and lumbar paraspinals and straight leg raises caused increased lumbar pain. R. 383.  He noted that the Claimant's sensation to light touch and pinprick was diminished in portions of the left foot, her lumbar flexion was limited to 45 degrees secondary to pain and squatting was limited due to pain.  *Id.*  The Claimant walked with an antalgic gait.  *Id.*  Dr. Hoffen's impression was muscle contraction type headache, cervical myofascial pain, and left lumbosacral radiculopathy.  *Id.*  He noted that the Claimant's "history, exam and clinical setting and two progress notes from Dr. Mamsa [were] most compatible with [his impression]."  *Id.*[2]  Dr. Hoffen opined:

> At the present time, it is advised that the [Claimant] can lift and carry ten pounds frequently and routinely less than ten pounds.  She can stand and walk more than four hours in an eight hour day.  She can sit cumulatively up to six hours per eight hour day.  There was full use of

[2] It appears from the medical record that Dr. Abdul Mamsa, M.D., examined the Claimant on three (3) occasions, January 14 and 31, 2005, and August 11, 2005. R. 385-89, 522-24.

> the upper extremities at this exertional level.  There is [sic] limitations of bending, stooping, crouching, climbing, kneeling, balancing and crawling secondary to back pain.  There are no restrictions of fine or gross manipulation with the hands.  Communication skills are normal . . . She should avoid unprotected heights . . .

R. 383-84.  Thus, based on Dr. Hoffen's assessment, the Claimant would only be capable of sedentary work. *See* R. 725.

### B.     DR. BENNETT ROSENTHAL, M.D.

On February 22, 2007, the Claimant was examined by Dr. Rosenthal, a neurologist. R. 178.  Dr. Rosenthal noted that he first examined the Claimant while she was in the hospital in November. *Id.*  He indicated that an MRI scan revealed evidence of demyelinating disease. *Id.* He stated that she has had numerous symptoms in the past, including dizziness, weakness, trouble with her gait, falling to the point where she needed ankle surgery, dropping things and trembling of her right hand.  *Id.*  He stated that they needed to consider treatment for MS on her next visit.  R. 178.

On March 22, 2007, Dr. Rosenthal noted that the Claimant continued to have ongoing symptoms of leg weakness, upper left chest and shoulder pain, forgetfulness, and numbness and tingling. R. 179.  Dr. Rosenthal prescribed immunotherapy for the Claimant.  *Id.*  On May 17, 2007, Dr. Rosenthal indicated that the Claimant remained "relatively stable" but she had increased leg pain. R. 180.  He stated:

> She has leg spasticity that affects her walking and balance and it has made it difficult for her to stand for any length of time and support her weight.  Her right hand has also developed an action tremor.  She has been on Betaseron for about a little over a month and a half and recently has been increased to the full time dose every other day.  She has also experienced some low back pain as well.  On exam she has some increased spasticity in the lower extremities and increased tone in the

> upper extremities with action tremor in the right upper extremity and
> hyperreflexia.  Her finger to nose is intact.  Cranial nerves are intact.

*Id.*  His impression was MS.  *Id.*  Dr. Rosenthal completed a physical residual functional capacity ("RFC") questionnaire and indicated the following:  he had been treating the Claimant for six (6) months; her symptoms were fatigue, muscle spasticity, leg pain, and right hand tremor; clinical and objective findings consisted of hyperreflexia and an abnormal MRI scan of the brain; Claimant's impairments could be expected to last at least 12 months; Claimant is not a malingerer; she would constantly experience pain and other symptoms that would interfere with her attention and concentration needed to perform simple tasks during a typical workday; she is capable of only low stress jobs; Claimant can sit and stand/walk less than 2 hours; she can rarely lift 10 pounds or less and never 20 pounds or more; she will have good days and bad days and will be absent from work an average of 4 days per month due to her impairments. R. 181-85.

## II.    ADMINISTRATIVE PROCEEDINGS

On September 20, 2004, the Claimant filed an application for a period of disability and disability insurance benefits, alleging disability as of May 20, 2002. R. 83-85.  On November 7, 2007, Administrative Law Judge ("ALJ") James R. Russell ("ALJ Russell") held an administrative hearing. R. 823-64.  The Claimant and a vocational expert ("VE"), Jack Turner, Jr., testified at the hearing. *Id.* At the hearing, the Claimant amended her alleged onset date to December 25, 2004. R. 712.

On December 18, 2007, ALJ Russell issued a decision finding that Claimant is not disabled. R. 712-20.  ALJ Russell made the following significant findings:

> 1.  Through the date last insured, the [C]laimant had the following severe
>     impairments:  degenerative disc disease (DDD) of the lumbar spine,
>     hypertension (HTN), [GERD], [MS], history of helicobacter pylori,

history of headaches secondary to lumbar spine impairment, and status post back surgery in 1991 (20 CFR 404.1520(c)). R. 714.

2. Through the date last insured, the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, including 1.04 pertaining to disorders of the spine and 11.09 pertaining to [MS] in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 1520(d), 404.1525 and 404.1526). R. 715.

3. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [C]laimant had the [RFC] to perform a range of light work. The [C]laimant has been able to lift and/or carry, and push/pull 20 pounds occasionally and 10 pounds frequently. She has been able to walk, stand, and sit for up to six hours each during an eight hour day. She must have a job that can be done either sitting or standing. She could not climb ropes, ladders or scaffolds. The [C]laimant should avoid exposure to unusual work place hazards. She should avoid extremes in heat or cold temperatures. R. 715.

4. Through the date last insured, the [C]laimant was unable to perform past relevant work (20 CFR 404.1565). R. 718.

In determining the Claimant's RFC, ALJ Russell gave great weight to the opinions and reports of Dr. Hoffen and limited weight to that of Dr. Rosenthal. R. 717-18.

On March 28, 2008, the Appeals Council remanded the case to an ALJ for resolution of the following issues, among others:

> Treatment notes dated for the period February 22, 2007 through May 17, 2007, from Dr. Bennett Rosenthal, treating neurologist, indicated a diagnosis of [MS] and opined that the [C]laimant could not perform the full range of sedentary work. Although the hearing decision indicates, page seven, that limited weight was given to the records and opinions of Dr. Rosenthal due to the lack of supportive records and objective medical findings, the evidence indicates that the [C]laimant experienced increasing leg pain and spasticity which affects the ability to stand, walk, balance, and the ability to support her weight. Dr. Rosenthal noted dizziness, fatigue, and weakness and that the [C]laimant had developed an action tremor in the right upper extremity and had difficulty gripping (Exhibit F, pages 526-534). Further consideration of the evidence is necessary in order to complete the record.

> The hearing decision indicates, finding number five, that the [C]laimant has the [RFC] for reduced range of light work.  However, on page six of the decision, great weight was given to the December 6, 2005, consultative examination opinion and report of Dr. Bruce Hoffen, which indicates a more limited [RFC] assessment of a reduced range of sedentary work (Exhibit 328-335 F).  Further consideration is needed.

* * * *

R. 725.

On October 22, 2008, ALJ Gerald F. Murray ("ALJ Murray") held a second administrative hearing. R. 865-90.  The Claimant, VE Robert Bradley, and a medical expert, Dr. Hershel Goren, testified at the hearing. *Id.*

Dr. Goren, a neurologist, provided testimony regarding the Claimant's condition based solely on a review of her medical records and without examining the Claimant. R. 867.  Dr. Goren testified that Claimant's only severe impairments are lumbar spine pain and MS, and she does not meet or equal any listings, either individually or in combination. R. 868.  He opined that the Claimant could lift or carry 20 pounds occasionally and 10 pounds frequently, with no other exertional restrictions. *Id.*  He stated that she should never climb a ladder, rope or scaffold, never balance, occasionally climb a ramp or stairs, and occasionally stoop, kneel, crouch, and crawl. R. 868-69.  She should avoid concentrated extreme heat and unprotected heights. R. 869.

Dr. Goren stated that in his opinion, Dr. Hoffen's placement of the Claimant at sedentary work is not supported by the record.  R. 869.  Likewise, he indicated that Dr. Rosenthal's placement of the Claimant at less than sedentary work was conclusory and not supported by the record, including Dr. Rosenthal's own notes.  R. 869-70.  When asked by Claimant's counsel why he felt Dr. Rosenthal's opinion was conclusory and unsupported, Dr. Goren responded: "Well, if you look at his examination, actually which is the same date, May 17, 2007, page 531,

Claimant's examination is only slightly abnormal and that's also true for previous evaluations made by Dr. Rosenthal on [March] 22, 2007, page 533 . . ." R. 870.[3]  When asked about the Claimant's symptoms reported by Dr. Rosenthal, Dr. Goren stated:  "Symptoms are subjectable . . .My testimony is based on objective findings on physical examination." R. 871.[4]

On January 23, 2009, ALJ Murray issued a decision finding that Claimant is not disabled. R. 13-21.  ALJ Murray made the following significant findings:

1. Through the date last insured, the [C]laimant had the following severe impairments:  [MS], and degenerative disc disease with secondary pain symptoms (20 CFR 404.1521 *et seq.*). R. 15.

2. Through the date last insured, the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). R. 16.

3. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [C]laimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the [C]laimant can occasionally balance, stoop, crawl, or climb ladders.  She should avoid exposure to unprotected heights and extreme heat. R. 16.

4. Through the date last insured, the [C]laimant was capable of performing past relevant work as a billing clerk, retail store manager, and computer technical support specialist.  This work did not require the performance of work-related activities precluded by the [C]laimant's [RFC]. R. 19.

In determining the Claimant's RFC, ALJ Murray stated:

Dr. Goren is given great weight in this matter, because he is a board certified neurologist acting as an impartial medical expert.  He arrived at his conclusion based on a comprehensive review of the [C]laimant's

---

[3] On March 22, 2007, Dr. Rosenthal noted that the Claimant continued to have ongoing symptoms of leg weakness, upper left chest and shoulder pain, forgetfulness, numbness and tingling and he prescribed immunotherapy for the Claimant.  R. 179.  On May 17, 2007, Dr. Rosenthal noted that the Claimant had increased spasticity in the lower extremities and increased tone in the upper extremities with an action tremor in the right upper extremity and hyperreflexia. R. 180.  Dr. Goren does not explain why he characterizes Dr. Rosenthal's findings as only slightly abnormal.  R. 870.

[4] Dr. Rosenthal specifically noted "<u>clinical findings and objective signs</u>" consisting of hyperreflexia and an abnormal MRI scan of the brain. R. 181 (emphasis added).

medical records, based his opinion of the [C]laimant's limitations on the objective findings.

Dr. Rosenthal's opinion as stated at pages 526-530, cannot be accepted. Though Dr. Rosenthal was the [C]laimant's neurologist, as noted by Dr. Goren, the limitations noted in this document are not supported by his progress notes, and did have accompanying explanation identifying the factors associated limitations. It is also noted by the undersigned that this document was prepared in May of 2007, after the [C]laimant's date last insured, and Dr. Rosenthal did not address what time period that the limitations would apply to. For these reasons this opinion is not accepted.

Dr. Hoffen's opinion as stated at pages 325-327 also cannot be accepted. Though he is a neurologist, his opinion of the [C]laimant's limitations is not supported by the objective evidence, including the opinion of Dr. Mamsa, who was had [sic] a treating relationship with the [C]laimant at the time (185-187).[5]

In short, while the degree of limitation suffered by the [C]laimant appears to have begun to increase after her date last insured, the objective evidence covering the time period under consideration does not significantly contradict Dr. Goren's opinion of the nature of the [C]laimant's severe limitations or resulting limitations.

R. 19. Thus, ALJ Murray's RFC assessment is based on the opinion of Dr. Goren and the apparent lack of conflicting medical records.

Upon request by the Claimant, the Appeals Council denied review of the ALJ's decision.

R. 4-7. On March 4, 2010, Claimant filed an appeal before this Court. Doc. No. 1.

## III.   THE ISSUES

The Claimant maintains that ALJ Murray erred:  1) in determining the Claimant's RFC by failing to give adequate weight to the opinions of Claimant's treating physician and

---

[5] Dr. Mamsa saw the Claimant on three separate occasions, twice in January of 2005 and once in August of 2005. R. 385-89, 522-24. From what the Court can glean from Dr. Mamsa's handwritten notes, he did not offer any opinion as to the Claimant's RFC or her ability to perform work activity. R. 385-89. ALJ Murray does not discuss the medical records and opinions of Dr. Mamsa in his opinion. Thus, this statement appears to be in complete reliance on the testimony of Dr. Goren.

examining consultative physician; 2) by failing to question the VE as to any conflicts with his testimony and the Dictionary of Occupational Titles ("DOT"); and 3) in determining that the Claimant was not credible. Doc. No. 15 at 3.  Claimant requests that the decision of the Commissioner be reversed and the Court award benefits or, in the alternative, the case be remanded to the Commissioner for further consideration.  *Id.* at 21.

The Commissioner maintains that substantial evidence supports his decision. Doc. No. 20 at 4.  The Commissioner states that ALJ Murray properly weighed the opinions of Drs. Rosenthal and Hoffen; ALJ Murray's failure to ask the VE if his testimony conflicted with the DOT was harmless; and substantial evidence supports ALJ Murray's credibility assessment. *Id.* at 4-21.  Accordingly, the Commissioner maintains that his decision should be affirmed. Doc. No. 20 at 21.

## IV.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 CFR §§ 404.1520(b), 416.920(b).  At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  Step three involves the determination whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.   Before considering step four

of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR

§§ 404.1520(e), 416.920(e).   Next, the ALJ must determine at step four, whether the claimant

has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f),

416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   At the last step of the

sequential evaluation process, step five, the ALJ must determine whether the claimant is able to

do any other work considering his RFC, age, education and work experience. 20 CFR §§

404.1520(g), 416.920(g).

### B.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*,

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982),

or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[6]

## V.   ANALYSIS

### A. WHETHER THE ALJ ERRED IN DETERMINING THE CLAIMANT'S RFC AND CONSIDERING THE OPINION EVIDENCE

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to

---

[6] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[7]   Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb*, 847 F.2d at 703.

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).   "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269.

It is well established in the Eleventh Circuit that the opinions of a non-examining physician do not constitute substantial evidence on which to base a decision. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).  In his decision, ALJ Murray relies on the testimony and opinions of Dr. Goren and rejects those of Claimant's treating neurologist, Dr. Rosenthal, and a one-time consultative examiner, Dr. Hoffen.  R. 19.  Dr. Goren was a non-examining physician who testified based on a records review.  R. 19, 867.  Therefore, his opinion does not constitute substantial evidence on which ALJ Murray may base his decision.  *Spencer ex rel. Spencer*, 765 F.2d at 1094; *Johnson,* 138 Fed.Appx. at 269.[8]

With respect to Dr. Rosenthal, ALJ Murray found that his opinion could not be accepted

---

[7] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).
[8] ALJ Murray also states that the objective evidence of record "does not significantly contradict" Dr. Goren's opinion of the nature of Claimant's limitations. R. 19.

and explained that it was not supported by his own progress notes.  R. 19.  Dr. Rosenthal's progress notes indicate that an MRI scan of the Claimant's brain showed evidence of demyelinating disease and he made objective findings of hyperreflexia, increased leg spasticity that affected her ability to walk and balance, and an action tremor had developed in her right hand. R. 178, 80.  These appear to the Court to be significant objective findings that would support Dr. Rosenthal's RFC assessment of the Claimant.

ALJ Murray further maintains that Dr. Rosenthal did not address the relevant time period to which his limitations applied. R. 19.  The Eleventh Circuit has held that the opinion of a treating physician is "still entitled to significant weight notwithstanding that [the physician] <u>did not treat the claimant until after the relevant determination date</u>." *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (reversed on other grounds, *Hand v. Heckler*, 761 F.2d 1545, 1547-48 (11th Cir. 1985)) (emphasis added).  In *King v. Astrue*, Case No. 3:09-cv-229-J-MCR, 2010 WL 1038476 at *8-9 (M.D. Fla. March 19, 2010), the Court also found that retrospective opinions may not be rejected simply because they are retrospective.  *Id*. (internal citations omitted).

Although ALJ Russell gave great weight to the opinions of Dr. Hoffen, ALJ Murray concluded that his opinion could not be accepted. R. 19, 717-18.  ALJ Murray stated in conclusory fashion that Dr. Hoffen's opinion was not supported by the objective evidence, including that of Dr. Mamsa. R. 19.  He did not explain why Dr. Hoffen's opinion was not supported by the objective evidence or how it was inconsistent with Dr. Mamsa's opinion.  *Id.*[9]

*In Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28,

---

[9] Dr. Hoffen noted objective findings of trigger point areas over the trapezius, supraspinatus and lumbar paraspinals and the Claimant's sensation to light touch and pinprick was diminished in portions of the left foot. R. 383.

2009), the Court held:

> When assessing the Plaintiff's impairments, the ALJ was required to make "specific and well-articulated findings . . ." [B]ecause an ALJ is not permitted to substitute his judgment for that of the medical experts, the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.  Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.

*Id*.  (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).  Therefore, reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision.  Accordingly, the undersigned recommends that the Court find that the final decision of the Commissioner was not supported by substantial evidence.

## B.  REMAND

As set forth above, the Claimant requests that the Commissioner's decision be reversed with a finding of disability and an award of benefits or, in the alternative, remanded for further proceedings. Doc. No. 14 at 28.  A remand for an award of benefits is appropriate only where the evidence establishes without any doubt that the claimant was disabled. *See Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  In this case, the Court is unable to conclude that the Claimant is disabled without any doubt.   Accordingly, it is recommended that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## VI.   <u>CONCLUSION</u>

Based on the forgoing, the undersigned recommends that the Court:

1.   **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) because the decision is not supported by

substantial evidence;[10] and

2.   Direct the Clerk to enter judgment in favor of the Claimant and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 17, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Report and Recommendation to:

Shea A. Fugate, Esq.
Law Office of Shea Fugate
P.O. Box 940989
Maitland, FL   32794

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

---

[10] Because the undersigned recommends that the Court find that the final decision of the Commissioner is not supported by substantial evidence, it is unnecessary to address the other issues raised by the Claimant.

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224